IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THOMAS CURTIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.1:20-cv-00546 (RDA/IDD) |
| | ) | |
| VIRGINIA STATE BOARD OF | ) | |
| ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

This matter comes before the Court on the Motion for Preliminary Injunction ("Motion"), Dkt. 3, filed by Plaintiffs Thomas Curtin, Donna Curtin, Kelley Pinzon, Tom Cranmer, Carol D. Fox, and Suzanne A. Spikes (collectively "Plaintiffs"). Considering the Complaint, Dkt. 1, the Motion, Dkt. 3, the Memorandum in Support of the Motion, Dkt. 4, Defendants' Memorandum in Opposition, Dkt. 26, Plaintiffs' Reply, Dkt. 31, briefs filed by Amici, Dkt. Nos. 25-2; 33-1, other relevant filings, and oral argument before the Court on May 27, 2020, the Court denies the Motion for the reasons stated below.

I. Background

In Virginia, certain categories of qualified voters may vote by absentee ballot. Pertinent to this case, Va. Code Ann. § 24.2-700(4) provides that "[a]ny duly registered person with a disability, as defined in § 24.2-101, who is unable to go in person to the polls on the day of election because of his disability, illness, or pregnancy" may vote by absentee ballot. Section 24.2-101 provides that "a person with a disability" is "defined by the Virginians with Disabilities Act (§51.5-1 et. seq.)." Va. Code Ann. § 24.2-101. As defined by this Act, a "[p]erson with a disability" is

more particularly defined as "any person who has a physical or mental impairment that substantially limits one or more of his major life activities or who has a record of such impairment." Va. Code. Ann. § 51.5-40.1.[1]

Additionally, and relevant here, pursuant to Va. Code Ann. § 24.2-603.1, "[i]n the event of a state of emergency declared by the Governor pursuant to Chapter 3.2 (§ 44-146.13 *et seq*.) of Title 44 or declared by the President of the United States. . ., the Governor may postpone an election by executive order in areas affected by the emergency." And

> [a]ny person who was duly registered to vote as of the original date of the election, and who has not voted, or who is permitted to recast their ballot due to the emergency, may vote by absentee ballot in accordance with the provisions of Chapter 7 (§ 24.2-700 *et seq*.).

Va. Code Ann. § 24.2-603.1.

On March 12, 2020, Governor Ralph S. Northam declared a state of emergency in the wake of the unprecedented COVID-19 pandemic sweeping the Commonwealth and the nation. Dkt. 1, 7. Governor Northam issued several Executive Orders implementing protective measures in response to these circumstances. *Id*. These measures included, among other things, closing schools, limiting gatherings to no more than 10 individuals, and closing "non-essential businesses." *Id*. (citing Va. Exec. Orders 2020-51 and 2020-53). On March 30, 2020, Governor Northam also issued a "stay at home" order, directing Virginians to remain in their residences as much as possible, noting several exceptions. *Id*. at 7-8 (citing Va. Exec. Order 2020-55). These Executive Orders expire on June 10, 2020. *Id*.

---

[1] Plaintiffs note that the General Assembly expanded absentee voting categories to allow any registered voter to vote absentee. *Id*. at 5 (citing Virginia's Legislative Information System, 2020 Session, § 24.2-700, available at https://lis.virginia.gov/cgi-bin/legp604.exe?201+ful+HB1ER. Pursuant to Bluebook standards, all websites herein were last visited on May 13, 2020). However, this legislation is effective July 1, 2020.

On April 13, 2020, Governor Northam issued Executive Order 2020-56, wherein he postponed the June 9, 2020, primary elections to June 23, 2020. *Id*. at 8 (citing Va. Exec. Order 2020-56). That Executive Order was subsequently amended on April 24, 2020. Va. Exec. Order 2020-56 (Amended). Pursuant to these Executive Orders, the Department of Elections was permitted to "prescribe appropriate procedures to implement the provisions of this section," "prescribe procedures in accordance with the Centers for Disease Control and Prevention and Virginia Department of Health to assist in ensuring the safety and well-being of election officials, officers of election, and voters," and "partner with [other agencies] to train election officials on preventive actions to reduce the risk of exposure to COVID-19." *Id*.

On March 16, 2020, Defendants[2] circulated guidance to local registrars concerning voting by absentee ballot for the above-referenced primary elections ("COVID-19 Guidance"). Dkt. Nos. 1, 6;16, 1-2. This COVID-19 Guidance was made public on March 17, 2020. *Id*. In the COVID-19 Guidance, voters were advised that they "may choose reason '2A My disability or illness' for absentee voting in the May and June 2020 elections due to COVID-19." *Id*. (quoting Va. Dep't of Elections, Absentee Voting, https://www.elections.virginia.gov/casting-a-ballot/absentee-voting/).

Under Virginia law, absentee ballots are required to be made available 45 days prior to the election. Dkt. 26-3, 3 (containing the Declaration of Christopher E. Piper) (citing Va. Code Ann. § 24.2-612 and 52 U.S.C. § 20301 *et seq*.). Thus, in this matter, absentee ballots were made

---

[2] Defendants include the Virginia State Board of Elections as well as Robert H. Brink, in his official capacity as Chairman of the Board, John O'Bannon, in his official capacity as Vice Chair of the Board, Jamilah D. Lecruise, in her official capacity as Secretary of the Board, and Christopher E. Piper, in his official capacity as Commissioner of the Virginia Department of Elections. Dkt. 1, 1.

available on May 8 and May 9, 2020.[3] Dkt. 26, 13 (citing Va. Code Ann. §§ 24.2-603.1 and 612). Voters have until June 16, 2020, to request absentee ballots. *Id*. (citing Va. Code Ann. § 24.2-701(B)(2); Va. Exec. Order No. 2020-56 (Amended)).

Plaintiffs[4] filed this suit as well as the instant Motion on May 13, 2020, against Defendants. Dkt. Nos. 1 and 3. Plaintiffs assert four claims against Defendants. First, Plaintiffs contend that Defendants' actions infringe upon Plaintiffs' fundamental right to vote by direct disenfranchisement in violation of 42 U.S.C. § 1983 as well as the First and Fourteenth Amendments of the United States Constitution. *Id*. at 17. Second, Plaintiffs argue that Defendants' conduct infringes upon Plaintiffs' fundamental right to vote by vote-dilution disenfranchisement in violation of 42 U.S.C. § 1983 as well as the First and Fourteenth Amendments of the United States Constitution. Dkt. 1, 19. Third, Plaintiffs allege that Defendants' conduct runs afoul of Article I, Section 4, Clause 1 of the United States Constitution. *Id*. And fourth, Plaintiffs argue that Defendants' conduct contravenes the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id*. at 20. In the instant Motion, Plaintiffs request that this Court grant the following relief:

> (A) prohibit[ ] Defendants from implementing their unlawful interpretation of "disability or illness" and from allowing persons without disability or illness to vote absentee; (B) order[ ] Defendants to issue guidance instructing Virginia voters that they may only vote absentee if they qualify under the statutory categories and definitions; (C) order[ ] Defendants, in coordination with city and county election officials, to conduct a public information campaign informing Virginia voters that they may only check "disability or illness" if they are disabled, ill, or pregnant, as statutorily defined, and (D) order[ ] Defendants, in coordination with city and

---

[3] Given that numerous "local general registrars' offices were not open on Saturday, May 9 ([45] days prior to June 23, 2020), those offices began issuing absentee ballots on May 8." Dkt. 26-3, 5.

[4] Plaintiffs allege that they are all "eligible and registered voter[s.]" Dkt. 1, 2-4. Additionally, both Plaintiffs Donna Curtin and Tom Cranmer qualify and intend to vote by absentee ballot. *Id*.

> county election officials, to contact any Virginia voters who claimed a disability or illness (1) for the first time and (2) whose absentee application was submitted after Defendants issued guidance using their unlawful interpretation of "disability or illness," to (i) inquire whether the voter marked the box according to Defendants' unlawful guidance, and (ii) if so, inform the voter may only vote absentee if they qualify under the statutory categories and definitions.

Dkt. 4, 29.

The Court entered an expedited briefing schedule, Dkt. 17, and heard the matter by video conference on May 27, 2020, consistent with this Court's protocols as directed by General Orders 2020-09 and 2020-12 in Case No. 2:20-mc-00007. Dkt. 27.

## II. Standard of Review

Federal Rule of Civil Procedure 65 permits district courts to issue preliminary injunctions. "A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Perry v. Judd*, 471 Fed. App'x. 219, 223 (4th Cir. 2012) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "[G]ranting a preliminary injunction requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way." *Hughes Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir.1994). Therefore, preliminary injunctions are "to be granted only sparingly." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 590–91 (E.D. Va. 2008) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir. 2003)).

To be entitled to such relief, Plaintiffs must establish that they are likely to succeed on the merits, that irreparable harm would result in the absence of such relief, that the balance of the equities tips in the Plaintiffs' favor, and that it is in the public interest to grant such relief. *Winter*, 555 U.S. at 20. Plaintiffs bear the burden of establishing that each factor supports granting the injunction. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir.

2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010).

Additionally, relevant here, a preliminary injunction can be categorized as mandatory or prohibitory. *League of Women Voters of N.C. v. N.C.*, 769 F.3d 224, 235 (4th Cir. 2014). "Mandatory injunctions alter the status quo, [whereas] prohibitory injunctions 'aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending.'" *Id*. at 236 (quoting *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013)). Consequently, mandatory injunctions are, "in any circumstance, disfavored." *Id*. (quoting *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). Thus, the standard of review for granting a preliminary injunction is "even more searching when" where, as here, the relief requested is mandatory in nature. *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d at 525.

### III. Analysis

In the instant Motion, Plaintiffs assert that Defendants usurped the role of the legislature by issuing the COVID-19 Guidance, and that the Defendants' interpretation of Virginia law set forth therein contravenes the legislature's intent. Dkt. 4, 11-13, 26. Plaintiffs maintain that numerous voters will suffer disenfranchisement as a result of the COVID-19 Guidance. *Id*. at 13. In support of that claim, Plaintiffs contend that issuing the COVID-19 Guidance will cause an exponential increase in requests for absentee ballots that election officials and United States Postal workers are ill-equipped to handle. *Id*. at 13-14. Plaintiffs more specifically argue that disenfranchisement will occur given the strains on those individuals, which will inevitably result in lost or tardy absentee ballots. *Id*. at 15. Plaintiffs also maintain that because of Defendants' illegitimate expansion of those eligible to vote by absentee ballot under reason code 2(A), numerous voters will suffer vote dilution as a result of the COVID-19 Guidance. Plaintiffs

elaborate that there will also be an increase in absentee votes made pursuant to the COVID-19 Guidance, which constitute unlawful votes. Thus, unlawful votes will be counted with legal votes, thereby again resulting in vote dilution. *Id*. at 21.

Turing to the arguments presented, it is not without serious question that COVID-19 has presented challenges in many contexts, creating significant questions of both constitutional and humanistic dimension. Thus, in the context of this case, a critical "balance" must be struck, to the extent practicable, to touch each of these components.

Initially, the Court recognizes that prevention of voter fraud has been recognized as a compelling state interest. *See Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 196 (2008), *affirmed*, 553 U.S. 181 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."); *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (noting that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy" and noting "the State's compelling interest in preventing voter fraud"). While the prevalence of voter fraud is contested by the parties, there have been documented instances of voter fraud in the Commonwealth. Dkt. 4, 6.[5] Earlier this month, in this Court's sister jurisdiction, the enforcement of one protective measure against voter fraud, the witness requirement for absentee voters, was enjoined by consent decree with respect to the June primary elections. *See League of Women Voters v. Va. State Bd. of Elec.*, No. 6:20-cv-00024, 2020 WL 2158249 (W.D. Va. May 5, 2020).

---

[5] Even as recently as May 26, 2020, in West Virginia, a mailman has been charged with attempted election fraud. Raby, John, West Virginia Mail Carrier Charged with Altering Absentee Ballot Requests, *Time*, May 27, 2020, https://time.com/5843088/west-virginia-mail-carrier-fraud-absentee-ballots/.

Moreover, Defendants assert that, among other arguments, Plaintiffs delayed filing suit with this Court. Dkt. 13, 1-2 (noting that Plaintiffs "s[a]t on their claims for nearly two months); 26, 7 (asserting the same). "[A]n affirmative defense to claims for equitable relief, laches requires a defendant to prove two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Perry*, 471 Fed App'x at 224. "To prove a lack of diligence, [Defendants] must show that [Plaintiffs] 'delayed inexcusably or unreasonably in filing suit.'" *Id*. (quoting *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)). "The second element—prejudice to the defendant—is demonstrated by a disadvantage on the part of the [D]efendant[s] in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the [P]laintiff[s'] conduct." *White*, 909 F.2d at 102.

With respect to the question of lack of diligence, on March 16, 2020, the disputed COVID-19 Guidance was issued to local registrars and made public on March 17, 2020. Nevertheless, Plaintiffs did not file suit until approximately two months later. *See, e.g.*, *Perry*, 471 Fed App'x at 224 (noting that the Movant "was able to bring these constitutional challenges for over four months before the filing deadline of December 22, 2011, [but] waited until the eleventh hour to pursue his claims"). Plaintiffs attempt to explain their delay by noting that a case similar to this one was filed on April 20, 2020, in the Western District of Virginia. *League of Women Voters*, 2020 WL 2158249. A Motion to Intervene was filed, wherein the intervenors sought to defend the witness requirement and bring a cross-claim for similar claims that are presented in this case. Dkt. 16, 2. As that case was resolved by consent decree, Plaintiffs argue that necessitated the filing of a separate suit. *Id*. Plaintiffs' argument is unavailing because *League of Women Voters*, 2020 WL 2158249, was filed over a month after the COVID-19 Guidance was issued, the Motion to

Intervene was filed on April 23, 2020, and the matter was ultimately resolved by consent decree on May 5, 2020. Dkt. 16, 2.

Plaintiffs also assert that the suit was timely filed because the magnitude of the potential for disenfranchisement and vote dilution did not become apparent until some time had passed. Dkt. 16, 3. Plaintiffs support their position by citing to the elections that occurred in Wisconsin, Idaho, and Ohio. *Id*. at 4. However, the Wisconsin election occurred in early April. *Id*. (The articles cited contain the dates of the elections.). To be sure, concerns about the possibility of disenfranchisement and vote dilution were apparent, at the latest, by that time.

Additionally, Plaintiffs contend that the principles set forth in *Purcell*, 549 U.S. 1 (2006), apply equally well to Defendants. Dkt. 16, 2. According to Plaintiffs, it naturally follows that they should have the opportunity to protect their fundamental right to vote in light of Defendants "mak[ing] sweeping changes to the election code." *Id*. The limited record here supports the conclusion that Plaintiffs had an incentive to file suit as soon as these injuries became apparent in order to rectify the perceived wrong prior to the actual commencement of the absentee ballot period. The disputed COVID-19 Guidance was issued to local registrars on March 16, 2020, and to the public on March 17, 2020, and the absentee ballot period began May 8 or 9, 2020, yet, Plaintiffs did not file suit until May 13, 2020. Ultimately, the Court finds that Plaintiffs failed to demonstrate the requisite diligence. *Perry*, 471 Fed. App'x at 226 (citing *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (citing *Williams v. Rhodes*, 393 U.S. 23, 34-35 (1968) ("[A]ny claim against a state electoral procedure must be expressed expeditiously."))). "This deliberate delay precludes the possibility of equitable relief. For 'equity ministers to the vigilant, not to those who sleep on their rights.'" *Id.* at 224 (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir.1995)).

9

Turning to the issue of prejudice to the Defendants, it is noted that prior to and during the commencement of the absentee ballot period, the COVID-19 Guidance was marketed to Virginians. Defendants represented at oral argument that as of May 26, 2020, about 90,000 have applied to vote by absentee ballot and approximately 13,000 of those applicants have already cast absentee ballots. Plaintiffs request that this Court prohibit Defendants from implementing the COVID-19 Guidance, require Defendants to issue new guidance, mandate that the new guidance be marketed to the public, and direct election officials to determine, on a case by case basis, that those who have cast absentee ballots utilizing reason code 2A did not do so under the interpretation advanced in the COVID-19 Guidance. Stated succinctly, granting the relief Plaintiffs seek has, at this point, become impractical and likely ineffectual in light of the rapidly approaching June 16, 2020, deadline for filing applications to vote by absentee ballot. And any temptation that this Court might have to engineer a solution to this dilemma is the type of constitutional fix often criticized by reviewing courts. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").

Considering the volume of those applying to vote by absentee ballot as well as those who are in receipt of their absentee ballots…offset against the nature of a "verification process" necessary to accomplish Plaintiffs' well-intended suggestion to protect the electoral process supports the proposition that ordering the relief requested would tax the system and may well, in these unprecedented times, breed more chaos. Dkt. 26-3, 6. Significantly, voters are not required to disclose their phone number or email address in applications to vote by absentee ballot, making the proposed inquiry all the more challenging. *Id.* Moreover, several unknown factors are at play, including how many would be needed to conduct this inquiry, the process of contacting those who

applied to vote by absentee ballot using reason code 2A, and what will be said in those interactions. Further, in the event the requested relief is granted, the integrity of the election could be further jeopardized considering that Defendants "are charged with ensuring the uniformity, fairness, accuracy, and integrity of Virginia elections. This is a state interest the Supreme Court has repeatedly credited." *Id*. (citing *Clements v. Fashing*, 457 U.S. 957 (1982)). Additionally, the public also suffers prejudice, in a sense, as granting the requested relief may result in confusion amongst election officials as well as voters. *See, Purcell*, 549 U.S. at 4-5 ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."); *Perry*, 471 Fed. App'x. 219, at 227 ("[W]here absentee ballots are mailed in accordance with the [] deadline and where a federal court subsequently granted the requested relief, officials would have to send a second and different ballot to each voter, which would risk confusion on the part of those voters and increase the cost and difficulty of administering the election."). Further, those who have applied to vote by absentee ballot under reason code 2(A) pursuant to the COVID-19 Guidance relied on that guidance. One example bears out this contention: if individuals are no longer permitted to use reason code 2A as interpreted pursuant to the COVID-19 Guidance, there is a risk that those who did so may not be able to timely resubmit their applications and receive their absentee ballots.[6]

Undermining belief in the purity of the electoral process, whether by inappropriately facilitating the participation of some or by diluting the participation of others, inherently brings us to question the sanctity of the democratic process itself. The bottom-line here is that while the

---

[6] The Court also notes that given the approval of the consent decree in *League of Women Voters*, 2020 WL 2158249, granting the relief requested presents the possibility of inconsistent analyses of the voting process.

basis of Plaintiffs' Complaint may be well-founded, the Court is constrained at this time from remedying these constitutional grievances.

It is in view of these principles that the Court must deny the Motion.

## IV. Conclusion

Accordingly, the Motion is DENIED pursuant to the equitable doctrine of laches. Because the doctrine of laches "operates as an affirmative defense," the Court does not address the merits of Plaintiffs' constitutional challenges at this time. *Perry*, 471 Fed. App'x. 219.

It is SO ORDERED.

Alexandria, Virginia
May 29th, 2020

/s/
Rossie D. Alston, Jr.
United States District Judge