IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| THOMAS CURTIN, DONNA CURTIN, SUZANNE A. SPIKES, KELLEY PINZON, TOM CRANMER, and CAROL D. FOX, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:20-cv-00546 |
| v. | ) ) ) | |
| VIRGINIA STATE BOARD OF ELECTIONS; ROBERT H. BRINK, JOHN O'BANNON, and JAMILAH D. LECRUISE, in their official capacities as Chairman, Vice-Chair, and Secretary of the Virginia State Board of Elections, respectively, and CHRISTOPHER E. PIPER, in his official capacity as Commissioner of the Virginia Department of Elections, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

From the onset of this case, plaintiffs have been clear that "the subject of the preliminary injunction motion[] will determine this matter." ECF 6, Motion to Consolidate, at 4. One week ago, on May 29, 2020, this Court denied plaintiffs' motion for a preliminary injunction. ECF 50. Plaintiffs' complaint should now be dismissed for the same reasons that this Court denied their motion for a preliminary injunction.

### STATEMENT OF FACTS

1. Virginia has been under a state of emergency due to COVID-19 since March 12, 2020. ECF 1, Complaint (Compl.) ¶ 24 (citing Virginia Executive Order 51).

2. One effective response to stop the spread of COVID-19 has been increasing "social distancing." Compl. ¶ 26. Social distancing measures include limiting travel outside the home, limiting the number of people in retail establishments and offices, and remaining "at least

six feet from any other person." Compl. ¶¶ 25–26 (quoting Virginia Executive Order

53). Plaintiffs acknowledge that these efforts have been successful in reducing the rate of new

infections, preserve hospital resources, and save lives. Compl. ¶ 28.

3.      Governor Northam also postponed Virginia's primary election originally

scheduled for June 9 to June 23, to further avoid citizens standing close together in crowds

during the pandemic. Compl. ¶ 27.

4.      The Virginia Department of Election ("ELECT") issued guidance to voters that

they may choose reason 2A "My disability or illness" and vote in the June 2020 election via

absentee ballot due to the ongoing public health crisis. Compl. ¶ 20.

5.      As required by statute, ballots have been available to qualified absentee voters

since Saturday, May 9, 2020. See Va. Code Ann. § 24.2-603.1; see also Va. Code Ann. § 24.2-

612. In situations in which localities' general registrars' offices were not open on May 9,

absentee ballots were made available on May 8.

6.      Plaintiffs filed suit on May 13, 2020, after absentee ballots became available to

qualified voters for the June 23 primary. Plaintiffs sought injunctive relief to require ELECT to

change its messaging regarding absentee voting in light of COVID-19, including specific

outreach efforts to voters who are voting absentee and citing 2A for the first time. Compl. ¶ 92.

Plaintiffs sought a declaration that the guidance violates the U.S. Constitution and the Fourteenth

Amendment. Compl. ¶¶ 90–91. All of plaintiffs' requested relief pertains to the June 23 primary.

7.      Along with their complaint, plaintiffs moved: (a) for a preliminary injunction

(ECF 3); (b) to expedite (ECF 5); and (c) to consolidate the hearing on their preliminary

injunction motion with the trial on the merits of plaintiffs' case (ECF 6).

8.      This Court granted the motion to expedite and denied the motion to consolidate. ECF 17.

## LEGAL STANDARD

To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Laches may be properly asserted in a Rule 12(b)(6) motion in the Fourth Circuit. See *Flame S.A. v. Indus. Carriers, Inc.*, 24 F. Supp. 3d 493, 501–02 (E.D. Va. 2014); *Marshall v. Meadows*, 921 F. Supp. 1490, 1494 (E.D. Va. 1996) ("The defendant is ultimately required to prove laches as an affirmative defense pursuant to Fed.R.Civ.P. 8(c), but as explained above, the Fourth Circuit disdains a hypertechnical reading of the rules; laches is an appropriate issue for a motion to dismiss in this case.").

## ARGUMENT

This case merits dismissal for failure to state a claim because plaintiffs' causes of action are barred by the doctrine of laches. What is more, with this Court's denial of plaintiffs' request for a preliminary injunction, any request for equitable relief fails as a matter of law because plaintiffs' claims are about to become moot.

A.  Plaintiffs' case is barred by laches

This Court held that plaintiffs' request for a preliminary injunction was barred by laches, concluding that the doctrine applied because plaintiffs lacked diligence in pursuing their claim and that the defendants were prejudiced by the delay. ECF 50 at 8. Both of these elements are also met with respect to plaintiffs' case as a whole and the entire case should be dismissed with prejudice.

As this Court has explained, "laches requires a defendant to prove two elements: '(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" ECF 50 at 8 (quoting *Perry v. Judd*, 471 Fed. Appx. 219, 224 (2012)). "Delay and prejudice are a complimentary ratio: the more delay demonstrated, the less prejudice need be shown." *Marshall v. Meadows*, 921 F. Supp. 1490, 1494 (E.D. Va. 1996). "To prove a lack of diligence, [defendants] must show that [plaintiffs] 'delayed inexcusably or unreasonably in filing suit.'" *Perry*, 471 Fed. Appx. at 224. In *Perry*, the Fourth Circuit held that the second prong of the laches analysis was satisfied when the party moving for injunctive relief threw planning for an upcoming election "into far greater confusion than would have been the case with timely legal action." *Id.* at 226.

As this Court already concluded, the first element of the laches analysis is satisfied because plaintiffs did not file suit as soon as their injuries became apparent; plaintiffs instead waited, like the plaintiff in *Perry*, "until the eleventh hour" to file suit. ECF 50 at 8 (quoting *Perry*, 471 Fed. Appx. at 224). Because plaintiffs waited to file suit until after the absentee ballot period had already begun, this Court also reasoned that plaintiffs ran afoul of the principles set forth in *Purcell v. Gonzalez*, 549 U.S. 1 (2006). ECF 50 at 11; see also *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.").

This Court's analysis on the first element of laches in its order denying plaintiffs' motion for a preliminary injunction applies with the same force to plaintiffs' case in chief. ECF 50 at 8–9. As with their motion for a preliminary injunction, plaintiffs' complaint relies heavily on events in Wisconsin to support their theories of harm. Compl. ¶¶ 45–48. In denying plaintiffs' motion

4

for a preliminary junction, this Court observed that "the Wisconsin election occurred in early April," but plaintiffs waited until mid-May to bring this case. ECF 50 at 9; see also Compl. 13 n.23–24 (citing articles from April 8 and April 9).

Similarly, the prejudice to defendants has only grown since plaintiffs moved for a preliminary injunction. As this Court held last week, "granting the relief Plaintiffs seek has, at this point, become impractical and likely ineffectual in light of the rapidly approaching June 16, 2020, deadline for filing applications to vote by absentee ballot." ECF 50 at 10. This Court reasoned that "in the event the requested relief is granted, the integrity of the election could be further jeopardized considering that Defendants are charged with ensuring the uniformity, fairness, accuracy, and integrity of Virginia elections." *Id.* at 11. (internal quotation marks and citation omitted). This concern has become greater over the past week. See *Purcell*, 549 U.S. 4–5 (court orders impacting elections "can themselves result in voter confusion and consequent incentive to remain away from the polls," a "risk [that] will increase" "[a]s an election draws closer").

Laches, therefore, applies to plaintiffs' case-in-chief as it did to plaintiffs' motion for a preliminary injunction.

B. <u>Any request for equitable relief fails as a matter of law because plaintiffs' claims are about to become moot</u>

Plaintiffs recognize that, starting July 1, Virginia law will no longer require that voters provide a reason for obtaining an absentee ballot. Compl. ¶ 18.[1] Plaintiffs, therefore, sought a preliminary injunction (ECF 3) on an expedited basis (ECF 5) to obtain specific relief applicable to the imminent June 2020 primary elections. This Court denied that relief.

_____

[1] See also Virginia's Legislative Information System, 2020 Session, House Bill 1, https://lis.virginia.gov/cgi-bin/legp604.exe?201+sum+HB1 (last visited June 3, 2020).

At the onset of this case, plaintiffs made clear that they will "present the[] same facts at any hearing on the merits" as they present in the motion for preliminary injunction "and the standard of proof to which they will have been subjected is sufficient for their consideration on the claim's merits." ECF 6, Motion to Consolidate, at 3. As a practical matter, therefore, any difference between a permanent and preliminary injunction is meaningless. Indeed, the concerns underlying this Court's conclusion that a preliminary inunction is "impractical and likely ineffectual" apply with even greater force to a permanent injunction because we are now a week closer to the June 16 deadline for filing applications to vote by absentee ballot. When the election at issue in plaintiffs' complaint comes and goes, this case will officially become moot.

Article III of the U.S. Constitution limits federal courts' jurisdiction to actual cases or controversies. To "invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). A declaratory judgment action must affect the rights of the litigants in the case before the court. *Id.* It is insufficient to base a declaratory judgment action on "a dispute [that] was very much alive" at an earlier date but that has since been resolved. *Id.* at 477. The parties must continue to have a personal stake in the lawsuit and its outcome to maintain the action. *Id.* at 478.

In *Lewis*, an Illinois-based banking company sought an injunction against a Florida official to compel the official to process the company's application to operate an Industrial Savings Bank (ISB). *Lewis*, 494 U.S. at 474. A Florida statute prohibited ISBs from being operated by an out-of-state company. *Id.* The company sought injunctive relief and declaratory judgment, on the basis that the Florida statute was unconstitutional because it violated the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3. *Id.* The company initially won an injunction,

but while the case was on appeal, there was a change in the law that made Florida's statute expressly authorized by federal law, resolving any tension with the Commerce Clause. *Id.* at 478. The change to the federal law required a new application by the company to operate an ISB under the new regulatory scheme. *Id.* at 479. Thus, the request for an injunction requiring the Florida official to process the company's application was no longer possible. *Id.* The declaratory relief was insufficient to keep the controversy alive because the company had to establish that it had "a specific live grievance against the application of the statutes [in Florida] to uninsured ISBs and not just an abstract disagreement over the constitutionality of such application." *Id.* (internal quotations omitted).

The analysis in *Lewis* is particularly helpful here and highlights why this case will soon be moot. Once the June 23 primary comes and goes, plaintiffs will no longer have a "specific live grievance" against Virginia's election officials and any remaining controversy will simply be "abstract disagreement" over the constitutionality of absentee voting. *Lewis*, 494 U.S. at 479.

## CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed.

Respectfully submitted,

By:  */s/ Michelle Kallen*

| | |
|---|---|
| Mark R. Herring<br>    *Attorney General* | Michelle S. Kallen (VSB No. 93286)<br>    *Deputy Solicitor General* |
| Erin B. Ashwell (VSB No. 79538)<br>    *Chief Deputy Attorney General* | Toby J. Heytens (VSB No. 90788)<br>    *Solicitor General* |
| Donald D. Anderson (VSB No. 22114)<br>Samuel T. Towell (VSB No. 71512)<br>    *Deputy Attorneys General* | Martine E. Cicconi (VSB No. 94542)<br>    *Deputy Solicitor General* |
| Heather Hays Lockerman (VSB  No. 65535)<br>    *Senior Assistant Attorney General* | Jessica Merry Samuels (VSB No. 89537)<br>    *Assistant Solicitor General* |
| Jacqueline C. Hedblom (VSB No. 68234)<br>Carol L. Lewis (VSB No. 92362)<br>Erin R. McNeill (VSB No. 78816)<br>    *Assistant Attorneys General* | Zachary R. Glubiak (VSB No. 93984)<br>    *John Marshall Fellow* |
| | Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219<br>(804) 786-7240 – Telephone<br>(804) 371-0200 – Facsimile<br>solicitorgeneral@oag.state.va.us |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 5, 2020, a true and accurate copy of this paper was filed

electronically with the Court's CM/ECF system, which will then send a notification of such

filing to the parties.


By:   */s/ Michelle S. Kallen*
                    Michelle S. Kallen